PER CURIAM.
¶1 Z Fish Shanty, LLC, appeals an order dismissing its suit for breach of contract, specific performance, and deceptive advertising and granting judgment to Chad Koch and Elizabeth Armstrong (collectively "Koch") on their counterclaim for breach of contract. Z Fish argues the circuit court erred by denying its summary judgment motion seeking specific performance of the real estate contract. Z Fish also challenges the circuit court's findings of fact and conclusions of law related to the condition of the property. We reject these arguments and affirm the order. Further, because we conclude that the appeal is frivolous, we grant Koch's motion for costs and reasonable attorney fees and remand this matter to the circuit court to determine the proper amount. See Lessor v. Wangelin , 221 Wis. 2d 659, 669, 586 N.W.2d 1 (Ct. App. 1998).
BACKGROUND
¶2 Koch owned a duplex rental property in Milwaukee and, in February 2016, listed that property for sale. Koch signed a real estate condition report stating, in relevant part, that he was not aware of defects in the heating system. An addendum to that report stated the furnaces at the property had been installed in 2002, making them fourteen years old at the time of the listing. On the morning of March 2, 2016, Z Fish submitted an offer to purchase the property for $ 310,000 with $ 10,000 earnest money, making the offer contingent on a home inspection disclosing no defects. An addendum to the offer itemized the appliances and equipment included in the sale, including two furnaces, with a total value of "$ 0.00." The offer was accepted later that day, and a March 23, 2016 closing date was scheduled.
¶3 After Z Fish's inspector found a problem with the garage, Koch accepted Z Fish's amended offer to purchase the property for $ 297,600, with the home inspection and testing contingencies removed. Before the scheduled closing, however, Z Fish learned that there had been two "no heat" service calls to the property within a four-month period-one in October 2015 and one on March 2, 2016. From the work order for the March 2 service call, Z Fish learned of the technician's assessment that the heat exchanger for the furnace in the lower unit was "breaking down quickly," and the owner "may want to consider replacing before it becomes a potential carbon monoxide concern." Z Fish consequently sought its own inspection of the property's heating system and obtained an estimate to replace both furnaces, as they were the same age and brand. Z Fish then made another amended offer to purchase the property for $ 285,600, and Koch rejected that offer.
¶4 After further negotiations failed, Z Fish refused to close on the property and filed the underlying suit for specific performance with price abatement, breach of contract, and deceptive advertising. Koch counterclaimed alleging breach of contract. Z Fish then filed a motion for summary judgment seeking specific performance with price abatement, and Koch filed a cross-motion for summary judgment. Both motions were denied after a hearing. Following a four-day bench trial, the circuit court dismissed Z Fish's claims and entered judgment in Koch's favor. This appeal follows.
DISCUSSION
¶5 First, Z Fish argues the circuit court erred by denying its summary judgment motion. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[1] We review a circuit court's decision on summary judgment de novo, applying the same standard as the circuit court. Hardy v. Hoefferle , 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.
¶6 Here, the circuit court denied summary judgment, concluding there were material questions of fact concerning which party breached the contract and whether the furnaces were defective, as that term is contemplated in the real estate condition report signed by Koch. The court noted:
This is a circumstance where the facts and circumstances have to be worked out so that credibility determinations, weight of evidence determinations can be made in terms of whether there was or was not a breach of contract by the plaintiff, just as whether or not there was a breach of contract by the defendant.
¶7 While Z Fish acknowledges, in the abstract, the proper standard for granting summary judgment, it fails to address how the circuit court erred by determining there were genuine issues of material fact. Instead, Z Fish insists it was entitled to summary judgment for specific performance as a matter of law, emphasizing that specific performance was an available remedy under the parties' contract and that specific performance with price abatement is a well-recognized remedy in Wisconsin and elsewhere. Citing Lambert v. Hein , 218 Wis. 2d 712, 582 N.W.2d 84 (1998), Z Fish further contends that although it wanted to purchase the property, Lambert dictates that it could not close on the property without waiving its objection to the alleged defect or foregoing its ability to collect damages. Regardless of whether Z Fish correctly recites applicable law, the circuit court properly denied Z Fish's summary judgment motion because it concluded there were genuine disputes of material fact. We need not address Z Fish's other arguments in favor of summary judgment. See Sweet v. Berge , 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (an appellate court need only address dispositive issues).
¶8 Next, Z Fish argues that the circuit court's post-trial findings of fact related to the condition of the furnaces are "incomplete, incorrect or erroneous." In support of its contentions, Z Fish cites several paragraphs from the court's findings of fact, underlining those statements with which it apparently disagrees or considers incomplete. Z Fish then follows each challenged finding with what it deems to be contrary evidence that it implies the court should have mentioned or otherwise failed to consider. Z Fish's challenges to the circuit court's findings of fact, however, ignore the circuit court's role as fact finder and this court's standard of review.
¶9 "Findings of fact shall not be set aside unless clearly erroneous[.]" WIS. STAT. § 805.17(2). "A finding is clearly erroneous if 'it is against the great weight and clear preponderance of the evidence.' " State v. Arias , 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748 (citations omitted). "When the [circuit] court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to their testimony." Plesko v. Figgie Int'l , 190 Wis. 2d 764, 775, 528 N.W.2d 446 (Ct. App. 1994). Due regard is given to the circuit court's opportunity to judge the credibility of the witnesses because of its superior opportunity to observe the witnesses' demeanor and gauge the persuasiveness of their testimony. See Lessor , 221 Wis. 2d at 667-68. When the evidence supports two conflicting but reasonable inferences, the circuit court, not the court of appeals, must decide which inference to draw. Plesko , 190 Wis. 2d at 776. The circuit court's findings "will not be overturned on appeal unless they are inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts." Global Steel Prods. Corp. v. Ecklund , 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W. 2d 269. Moreover, we do not search the record for evidence opposing the circuit court's decision, but for evidence supporting it. See Mentzel v. City of Oshkosh , 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988).
¶10 Here, Z Fish's brief-in-chief fails to develop a cogent argument for why it believes any of the circuit court's findings of fact are clearly erroneous. Although its reply brief clarifies its position as to the challenged facts, it merely attempts to reweigh the evidence in a way that supports its position. As noted above, the circuit court, as fact finder, is the ultimate arbiter of the credibility of witnesses and the weight to be given to their testimony. To the extent Z Fish asserts the findings were incomplete because the circuit court failed to mention specific evidence, we are unwilling to infer that it failed to consider that evidence. See Chernetski v. American Family Mut. Ins. Co. , 183 Wis. 2d 68, 80, 515 N.W.2d 283 (Ct. App. 1994). The evidence cited by Z Fish was before the circuit court, and we presume that, absent a showing to the contrary, the court considered all of the evidence. Furthermore, WIS. STAT. § 805.17(2) requires a circuit court to set forth findings of ultimate fact. A circuit court's finding of ultimate fact "need not be supplemented by commentaries on the evidence or reasons for which the findings are made." Chernetski , 183 Wis. 2d at 80. We nevertheless address each challenge in turn.
¶11 Z Fish first challenges the circuit court's finding that the October 2015 service call was made because the furnace in the lower unit was "not working properly" as opposed to it "not operating at all." Z Fish cites the trial testimony of Michael Drew, the service technician who made that service call, emphasizing he was dispatched to the property because the furnace was "not operating." Drew further explained that after he "cleaned the trap" and "made sure the drain was free and clear," he was "able to start the unit up." It is unclear why Z Fish takes issue with the court's characterization of the lower unit furnace as "not working properly," rather than "not operating," as Drew testified that both furnaces "were operating properly and within appropriate parameters" after the tune up. The circuit court's finding therefore had an evidentiary basis and was not clearly erroneous.
¶12 Z Fish next challenges particular findings related to the March 2, 2016 service call made by service technician Clayton Zieroth. Specifically, Z Fish notes the circuit court's statement that Zieroth acknowledged the lower unit furnace was in a similar condition at the time of the March 2016 service call-i.e., with a lot of rust and build up in the drain trap and hoses-as when Drew made his October 2015 service call. Z Fish then emphasizes the circuit court's statement that Zieroth "did not point out a safety concern because it was within unit specifications" and counters with deposition testimony, repeated at trial, in which Zieroth stated that he did discuss safety issues with Koch. Specifically, when asked whether Zieroth discussed with Koch that there might be a safety issue, Zieroth responded: "Correct. Once the heat exchanger gets to the point to where it fails and carbon monoxide is concerned being a rental property, I just wanted to make sure he knew that." Zieroth, however, testified that he told Koch the furnaces were "operating safely at this time" and he "may want to consider" replacement "for the future" as the furnaces were over ten years old. The circuit court's finding, therefore, is not clearly erroneous.
¶13 Relatedly, Z Fish challenges the circuit court's findings related to the testimony of Jason Fox, owner of Capital Heating & Cooling, specifically underlining the court's finding that "if a technician believes there is a present safety concern[,] the technician must shut the furnace down; the rust in the heat exchanger was not an immediate safety problem." Z Fish cites Fox's testimony that there is no way to predict "with any certainty" when a degrading secondary heat exchanger will fail and that once it fails, there "is a safety concern" associated with carbon monoxide. The court's own findings, however, acknowledged Fox's testimony "that you cannot predict how long the furnace will last; a safety concern would follow the failure of the heat exchanger."
¶14 Next, Z Fish appears to challenge the circuit court's finding that Koch's real estate agent accepted Z Fish's offer to purchase at 2:25 p.m. on March 2, 2016. It is unclear what issue Z Fish has with this finding, as Z Fish acknowledges that a signed copy of the accepted offer was sent to Z Fish's agent at 2:25 p.m.
¶15 Z Fish also challenges the circuit court's findings related to the testimony of Jason Gavin, Z Fish's heating, ventilation, and air conditioning ("HVAC") expert. Specifically, Z Fish takes issue with the circuit court's findings that after an inspection, Gavin determined "nothing was out of the ordinary" and "that in March 2016 he never stated that the [property] needed new furnaces immediately." Although Gavin testified that if it was his property, he would recommend replacement of the furnaces, he acknowledged that he had not recommended replacement in March 2016 because he had been called only to give an estimate on the cost of replacing the furnaces. Gavin acknowledged that based on the objective data, there was "no problem" with respect to carbon monoxide levels during the March 2016 service call. Gavin further testified that when he inspected the furnaces in May 2017, the furnaces were "operating within normal parameters." This challenge to the circuit court's findings therefore fails.
¶16 Next, Z Fish challenges the circuit court's findings of fact related to the testimony of Todd Kisch, an HVAC contractor who inspected the furnaces in September 2016, and whose company installed the furnaces in 2002. Z Fish takes specific issue with the court's findings that Kisch did not find any failure with either heat exchanger; that he found little debris in the drain traps; that it did not appear that either furnace was failing; and that it did not appear the heat exchanger in the upper unit was failing. Despite Z Fish's challenge to these findings, Kisch testified that, in his view as an HVAC contractor, he did not believe the furnaces were failing or that the heat exchanger showed signs of failure. Kisch also testified that if he felt the furnaces could not be safely used, he would have shut them down, as industry practice dictates.
¶17 Finally, Z Fish challenges the circuit court's finding that Koch "did not believe that there was any issue with the furnaces that he needed to report." Consistent with the court's finding, Koch testified that he did not believe there were any defects in the furnaces and that the service calls did not need to be disclosed. Although Koch admitted that Zieroth had recommended replacement, he further testified that Zieroth represented that the furnaces could be "safely operated at this time." Thus, Koch took the position that if the furnaces were working and not in violation of any carbon monoxide limits, they were "not ready to be replaced at this time." Citing the condition report that Koch completed, Z Fish nevertheless asserts that "it is objectively inconceivable that a seller or a trial court reviewing this evidence would not conclude that a buyer might think this information relevant to its purchasing decision." The issue before the court, however, was not whether Koch might think the information was relevant but, rather, whether disclosure was required by knowledge of a defect, as that term is defined in the contract and discussed below.
¶18 While Z Fish highlights evidence in the record that may appear to contradict some of the circuit court's findings, it fails to establish that there is no evidence in the record to support the court's findings. See Mentzel , 146 Wis. 2d at 808. The evidence the circuit court found persuasive indicated that the furnaces required maintenance that was performed. The furnaces were older and, at some unknown point, would require replacement. At the time of the listing, however, they were functioning within operational standards and were not an immediate safety concern. Ultimately, the circuit court's findings were reasonable and not contrary to the great weight of the evidence or the laws of nature. See Global Steel , 253 Wis. 2d 588, ¶10. We discern no error.
¶19 Finally, Z Fish argues the circuit court erred by concluding the condition of the furnaces did not constitute a "defect" under the parties' contract. Although Z Fish properly notes that contract interpretation presents a question of law that this court reviews independently, see Estate of Kriefall v. Sizzler USA Franchise, Inc. , 2012 WI 70, ¶14, 342 Wis. 2d 29, 816 NW.2d 853, the legal question in this case is so intertwined with the facts that we review the issue as a mixed question of fact and law. See Wassenaar v. Panos , 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983). While the condition of the furnaces is a question of fact, whether those facts constitute a defect under the contract is a question of law. In such cases, although the circuit court's conclusion is not controlling, it is given weight. See id.
¶20 Within the real estate condition report, "defect" is defined as a "condition that would have a significant adverse effect on the value of the property; that would significantly impair the health or safety of future occupants of the property; or that if not repaired, removed or replaced would significantly shorten or adversely affect the expected normal life of the premises." Z Fish does not argue that the circuit court's factual findings do not support the court's legal conclusion that the condition of the furnaces was not a "defect" under the contract. Instead, it relies upon facts directly contrary to those found by the circuit court and, in essence, argues the court should have weighed the evidence and credibility of witnesses differently to arrive at a different conclusion. The evidence, however, supports the circuit court's factual findings, and those findings support the conclusion that the condition of the furnaces did not constitute a defect.
¶21 The furnaces would not have an adverse effect on the value of the property, as they were operational and did not pose a known safety risk. Further, a fourteen-year-old furnace would not have much value regardless of its condition, and the parties contractually agreed that the furnaces would have a "$ 0.00" value. The circuit court's conclusion that the furnaces did not have a condition that would significantly shorten the normal life of the property was supported by the fact that the furnaces continued to operate for at least fourteen months after the March 2016 service call. Finally, the evidence supports the circuit court's conclusion that the condition of the furnaces would not significantly impair the health or safety of future occupants of the property. In particular, various technicians who either serviced or inspected the furnaces testified they could be operated safely, including a technician who testified the furnaces were operational a year after the originally scheduled closing. The evidence supports the conclusion that the condition of the furnaces did not constitute a defect, as that term is defined in the parties' contract. We therefore affirm.
¶22 Koch argues Z Fish's appeal is frivolous and requests attorney fees and costs pursuant to WIS. STAT. RULE 809.25(3). We agree. Z Fish's argument in favor of summary judgment ignores the plain requirement that there must be no dispute of material facts. With respect to the numerous challenges to the circuit court's findings of fact, Z Fish utterly ignores our standard of review, as discussed above. With respect to its claim that the circuit court erred by concluding the condition of the furnaces met the definition of "defect," its argument is nothing more than another challenge to the circuit court's findings of fact that ignores our standard of review. We therefore conclude that Z Fish knew or should have known that its arguments on appeal lacked a reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. See RULE 809.25(3)(c)2. Therefore, we conclude the entire appeal is frivolous. We grant Koch's motion for costs and reasonable attorney fees and remand this matter to the circuit court to determine the proper amount.
By the Court. -Order affirmed and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.