**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 24, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP947**

STATE OF WISCONSIN

Cir. Ct. No. **2020JC27**

IN COURT OF APPEALS
DISTRICT IV

---

IN THE INTEREST OF K.M.R., A PERSON UNDER THE AGE OF 18:

WOOD COUNTY DEPARTMENT OF HEALTH SERVICES,

    PETITIONER-RESPONDENT,

  V.

P. R.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Wood County: GREGORY J. POTTER, Judge. *Affirmed.*

¶1 KLOPPENBURG, J.[1] P.R. appeals the circuit court's order placing her daughter outside P.R.'s home. P.R. argues that the court's following two

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

findings are clearly erroneous: (1) that continued placement of the child in P.R.'s home was contrary to the child's welfare; and (2) that the Wood County Department of Health Services made reasonable efforts to prevent the removal of the child from her home. The evidence in the record amply supports these findings. Accordingly, the order is affirmed.

## BACKGROUND

¶2    On February 11, 2020, representatives of the Wood County Department of Health Services (Department) and the Wisconsin Rapids Police Department received a referral indicating that K., an eight-year-old child who lived with her mother and her stepfather, had been sexually abused by her stepfather in the family's home. A representative from each organization interviewed the child that same day at the child's school, and the child reported to them that her stepfather, M.R., had sexual contact with her. The Department representative, a social worker, met with the child's mother, P.R., when P.R. arrived at school to pick up the child at the end of the day. The social worker "tried to develop" a plan with P.R. so that the child "would [have] no contact with" M.R., offering "a protective plan having either [M.R.] leave the residence so [the child] and [P.R.] could go home or having [P.R.] and [the child] leave the residence." P.R. indicated to the social worker that "neither of those options would be appropriate" for several reasons: she had neither "a driver's license nor a car," M.R. was her "main transportation," she "didn't have the money" for M.R. to leave, and she "had no friends or family in the area." When the social worker offered a shelter as an "alternative place for the mother and [the child] to go", P.R. refused that plan. The Department removed the child from the family's home that day and subsequently filed a Petition for Protection or Service (CHIPS petition) under WIS. STAT. ch. 48.

¶3      The next day, the circuit court held a fact-finding hearing on the CHIPS petition and found that the child was in need of protection or services and that placement in her mother's home was contrary to the child's welfare. The court appointed a guardian ad litem, ordered the child's temporary placement in a foster home, and granted P.R. supervised visits with the child. The court scheduled a dispositional hearing for March 24, 2020.

¶4      The Department submitted to the circuit court, as required by WIS. STAT. § 48.33, a disposition report that contained an account of a forensic interview conducted with the child in which she described the duration and details of M.R.'s sexual abuse, the Department's assessment of the serious risks to the physical safety and physical health of the child, and the Department's recommendations for continued placement at the foster home and conditions for the child to be returned to P.R.'s home.

¶5      By the time of the March 24 hearing, M.R. had been arrested in connection with the child's reports of sexual abuse and was held in the Wood County Jail. At the hearing, P.R. agreed that the child was in need of protection and services but contested the child's placement outside P.R.'s home. The circuit court considered the disposition report described above and testimony from the Department social worker, the detective investigating criminal charges against M.R., P.R., and the guardian ad litem. I present in some detail this evidence presented at the dispositional hearing because it relates to both of the issues raised by P.R. on appeal.

¶6      At the dispositional hearing, the Department social worker responsible for the child's case testified that P.R. had made statements that she did believe her child was victimized but also that P.R. did not believe that M.R. was

"the victimizer." The social worker recommended that the child "remain in foster care at this time" and that P.R. continue to have supervised visitation with the child because such recommendations were "in [the child's] best interest at this time." On cross-examination, the social worker testified that she did not believe returning to P.R.'s home with M.R. out of the home was in "[the child's] best interest due to [P.R.] not believing that this has occurred between [the child and M.R.]. [The child] needs support and the help getting through this and her mother doesn't understand or believe that that has occurred." She testified that her recommendations included a list of conditions contained in her disposition report to the court.

¶7    The detective responsible for investigating the criminal charges against M.R. related to the child's reports of sexual abuse testified that, as part of his investigation, he interviewed P.R., who "stated that she did believe that something had happened [to the child] but that she was unsure of who had done it." The detective testified that after M.R.'s arrest and placement in the Wood County Jail he monitored M.R.'s phone calls. He testified that "over the last two weeks [M.R. and P.R. have] had an average of 40 to 50 phone calls a day," adding up to a total "average of five hours a day," that "they most often discuss the [criminal] case" against M.R., and that M.R. directed P.R. to tell the child that she "needs to tell the truth so this can be over with" and discussed "what questions she should ask" the child during visitation. The detective testified that M.R. continued, while incarcerated, to exert control over P.R.'s life, including matters such as "when to put money on what accounts and what to pay for, where is she going, who is she with, what is she dressed in, et cetera."

¶8    P.R. testified that she had not agreed to move with the child to a shelter because:

> in my past I was in a shelter and I was told that shelter was safe for me and I was raped by a staff member there. So when I just moved here, we didn't know nobody, I didn't know anything or any places and I didn't want to put me and my daughter in danger until I knew if that was a safe place for us to go.

P.R. testified that if M.R. were to be released on bail, she would not "allow him back into [her] life" "unless the courts say it was all right." On cross-examination, P.R. stated, "I believe [the child's] been abused but I can't say who has done it." When asked whether M.R. controls her life, P.R. stated "No, he does not."

¶9     The child's guardian ad litem testified that it was in the child's best interest to remain placed with foster parents and that he did not recommend placement with P.R. because "you've got to stand up for your child. Child is number one … I don't think she has done that and I think it's best for [the child] that she be in a foster setting at this time." The guardian ad litem explained that, based on his review of the disposition report and testimony at the hearing, he concluded that the child should have supervised visitation subject to the conditions set forth in the report.

¶10     Through counsel, P.R. requested that the child be placed in P.R.'s home under the supervision of the Department. She conceded that the Department had made reasonable efforts to prevent the child's removal from P.R.'s home while M.R. still lived there, but argued that it had not made reasonable efforts after M.R. was incarcerated and being held on a $100,000 cash bond. P.R. further argued that "initially" the Department "didn't have an objection" to the child being placed with P.R. "provided M.R. wasn't there," and that now that M.R. was incarcerated "that option has come back."

¶11    The circuit court found that placement with P.R. was contrary to the child's welfare because:  P.R. "was made aware of" the sexual abuse and "continued to reside with the abuser" until he was incarcerated; P.R. "didn't know" whether M.R. perpetrated the abuse; P.R. continued to have "daily contact with him;" P.R. talked with M.R. about "the investigation and what she is to discuss about this case," and had the "ability to influence the child and the child's testimony"; and P.R. continued a "personal relationship" with M.R. that was "ongoing."  The court found that reasonable efforts had been made to prevent the removal of the child in that "the worker attempted to work out a protective plan" with P.R. but "she declined" and "continued to have contact with the alleged perpetrator throughout this matter."

¶12    The circuit court issued, based on its findings that placement in P.R.'s home was contrary to the child's welfare and that reasonable efforts were made to prevent the child's removal, a dispositional order placing the child in foster care.  It ordered P.R. to cooperate with the Department by:  "participating in case planning, maintaining regular contact with the social worker"; completing "a mental health evaluation" and "full psychological evaluation and/or parenting evaluation and follow[ing] all treatment recommendations"; engaging in "regular mental health therapy and follow[ing] all recommendations of the provider"; not allowing M.R. "to reside in her home … without approval from the Department"; participating in a "visitation plan ... which will include regularly supervised visitation" and "in parenting education provided by the Department," and, "when deemed appropriate," in therapy with the child.  This appeal follows.

## DISCUSSION

¶13    P.R. argues that the circuit court erred in finding that continued placement of the child in the home would be contrary to the child's welfare and that the Department made reasonable efforts to prevent the removal of the child from the home.  I first explain the standard of review and general legal principles governing a circuit court's decision to order that a child be placed outside the parent's home.  I next address each of the challenged findings in turn and explain why I conclude that each finding is not clearly erroneous and why I reject P.R.'s arguments to the contrary.

### I.  Standard of Review and General Legal Principles

¶14    This court reviews a circuit court's dispositional order for an erroneous exercise of discretion.  *State v. Richard J.D.*, 2006 WI App 242, ¶5, 297 Wis. 2d 20, 724 N.W.2d 665 (citing *J.K. v. State*, 68 Wis. 2d 426, 434, 228 N.W.2d 713 (1975)).  "The circuit court properly exercises its discretion when it examines the relevant facts, applies the proper legal standard, and uses a rational process to reach a reasonable conclusion."  *Id.* (citing *Garfoot v. Fireman's Fund Ins. Co.*, 228 Wis. 2d 707, 717, 599 N.W.2d 411 (Ct. App. 1999)).  On appeal, the circuit court's findings of fact "shall not be set aside unless clearly erroneous." WIS. STAT. § 805.17(2).  "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence."  *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.  Under this standard, "'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'"  *Id.* (quoted source omitted).  "Moreover, we search the record not for

evidence opposing the circuit court's decision, but for evidence supporting it." *Id.* (*citing* ***Mentzel v. City of Oshkosh***, 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988)); *Cf.* ***C.R. v. T.R.***, 2016 WI App 24, ¶15, 367 Wis. 2d 669, 681, 877 N.W.2d 408 (this court will "'search the record for evidence to support findings reached by the trial court, not for evidence to support findings the trial court could have reached but did not.'") (quoted source omitted).

¶15    The "paramount goal" of Chapter 48 of the Wisconsin Statutes ("The Children's Code") is "to protect children." WIS. STAT. § 48.01(1)(a). "In construing this chapter, the best interests of the child … shall always be of paramount consideration." Sec. 48.01(1) "The 'best interests of the child is the polestar of all determinations under ch. 48.'" ***Prestin T.B. v. Julie A.B.***, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402 (quoted source omitted). Wisconsin law establishes a two-part process for ordering protection or services for a child: (1) a fact-finding hearing to determine whether grounds have been proven by clear and convincing evidence for adjudicating a child in need of protection and services; and (2) a dispositional hearing. WIS. STAT. §§ 48.31(1) and (7)(a). Here, P.R. challenges only the circuit court's findings made at the conclusion of the dispositional hearing.

¶16    The dispositional hearing "emphasize[s] the child's future well-being" and, unlike at the fact-finding hearing, at the dispositional hearing "the ordinary burden, the greater weight of the credible evidence" applies. ***T.M.S. v. Rock Cnty. Dep't of Social Services***, 152 Wis. 2d 345, 357, 448 N.W.2d 282. The circuit court may order the child placed outside the parent's home only upon a finding that continued placement of the child in his or her home would be "contrary to the welfare of the child" and that reasonable efforts were made to "prevent the removal of the child from the home." WIS. STAT. § 48.355(2)(b)6.

As to the first finding, we follow the lead of the Department and the circuit court and use "welfare" and "best interests" of the child interchangeably. *See* WIS. STAT. 48.01 (discussing "best interest of the child," "welfare of the child," and "child welfare" as the paramount consideration under Wisconsin's Children's Code). As to the second finding, factors the court considers "shall include, but not be limited to" five statutorily enumerated factors at WIS. STAT. § 48.355(2c)(a)1. to 5., as follows:

> 1. A comprehensive assessment of the family's situation was completed, including a determination of the likelihood of protecting the child's health, safety and welfare effectively in the home.
>
> 2. Financial assistance, if applicable, was provided to the family.
>
> 3. Services were offered or provided to the family, if applicable, and whether any assistance was provided to the family to enable the family to utilize the services.
>
> 4. Monitoring of client progress and client participation in services was provided.
>
> 5. A consideration of alternative ways of addressing the family's needs was provided, if services did not exist or existing services were not available to the family.

## II. Analysis

¶17 The record contains ample evidence supporting the circuit court's findings that placement with P.R. was contrary to the child's welfare and that the Department made reasonable efforts to prevent removal.

### A. Finding that placement with P.R. was contrary to the child's welfare

¶18 P.R. does not dispute that, in considering whether the child should be placed in foster care and not with P.R., the circuit court applied the proper legal

9

standard of "the best interests of the child." The court explained that in making a determination as to placement, "I have to look at what's in the best interest of the child" and that "I can't find that [P.R.] would be looking out for the best interests of her child if the child were placed back with her." *See **Prestin T.B.***, 255 Wis. 2d 170, ¶30 ("The 'best interests of the child is the polestar of all determinations under ch. 48.'") (quoted source omitted).

¶19 The circuit court considered the evidence regarding the child's best interests and found that placement with P.R. would be contrary to the child's welfare. That finding is supported by the evidence related above that P.R. could not protect the child because P.R. did not believe the child's reports that she was abused by M.R; P.R. continued an ongoing personal relationship with M.R. even after he was incarcerated in connection with criminal charges based on his alleged sexual abuse of the child; M.R. continued to exercise control over P.R.; P.R. had the potential to, at M.R.'s direction, influence the child's testimony in the criminal case against M.R.

¶20 Evidence that P.R. did not believe the child includes not only testimony from the social worker and the detective but also her own statement under oath that she "could not say" who had abused her child.

¶21 Evidence that P.R. continued to have a personal relationship with and be controlled by M.R. includes the detective's testimony that P.R. and M.R. had "an average of 40 to 50 phone calls a day with an average of five hours a day" through which M.R. exercised control over P.R. in terms of "when to put money on what accounts and what to pay for, where is she going, who is she with, what is she dressed in, et cetera."

¶22 Evidence that P.R. had the potential to, at M.R.'s direction, influence the child's testimony in the criminal case against M.R. includes the detective's testimony that, during their phone calls, P.R. discussed "what questions [P.R.] should ask" the child regarding the sexual abuse so that the criminal case against [M.R.] could be "over with" and the fact that the Department recommended that P.R. not have unsupervised visits with the child due to "concerns for [P.R.'s] lack of belief in her daughter."

¶23 Given all of this evidence supporting the circuit court's finding that placement with P.R. was contrary to the child's welfare, P.R. cannot show that that finding is "against the great weight and clear preponderance of the evidence." *See Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12 (findings of fact are clearly erroneous when against great weight and clear preponderance of the evidence).

¶24 P.R. makes two arguments to the contrary. First, P.R. argues that the circuit court erred because the circuit court's reliance on "the idea that [P.R.] would influence [the child's] testimony in M.R.'s criminal case [is] not based on any facts appearing in the record." This argument fails because this "idea" is supported by the detective's testimony regarding repeated daily phone calls between M.R. when he was in jail and P.R., from which it can reasonably be inferred both that M.R. was telling P.R. to coach the child to testify in a specific way about the abuse and that P.R. was in many substantive ways controlled by M.R. Testimony by the social worker and guardian ad litem similarly supports this inference. P.R. points to other evidence that she asserts would support a different inference, but this court does not disturb reasonable inferences supported by evidence in the record. *Pfeifer v. World Serv. Life Ins. Co.*, 121 Wis. 2d 567, 571, 360 N.W.2d 65 (Ct. App. 1984) ("An appellate court must accept a

reasonable inference drawn by a trial court from established facts if more than one reasonable inference may be drawn.").

¶25 Second, P.R. argues that the circuit court failed to address the fact that the Department's initial offer of a protective plan keeping P.R. and the child together but separating both from M.R. remained appropriate now that M.R. is in custody and "could not possibly harm [the child]." This argument fails because it presents only one inference that could be drawn from the change in circumstances but ignores the evidence referenced above, including P.R.'s continued contact with and control by M.R. and her disbelief of the child's reporting of abuse by M.R. This evidence supports the inference drawn by the court that P.R. continued a personal relationship with M.R. even as he was in jail and was susceptible to his influence on matters including his abuse of the child and the child's potential testimony about that abuse. P.R.'s contention that the court drew this inference without explanation is belied by the record.

¶26 In sum, P.R. fails to show that the circuit court's finding with respect to the child's welfare is clearly erroneous.

*B. Finding that the Department made reasonable efforts to prevent removal*

¶27 The circuit court's finding that the Department made reasonable efforts to prevent the removal of the child from her home is also supported by ample evidence in the record. The Department offered three possible plans to P.R. that would allow her to protect the child and maintain physical placement: P.R. and the child would either move to a new residence together away from M.R., move to a shelter together away from M.R., or stay in their apartment provided that there would be no contact with M.R. In addition, evidence was presented, through testimony and through the Department's report, as to each of the five

factors in WIS. STAT. § 48.355(2c)(a) that a circuit court must consider in determining whether reasonable efforts were made to prevent removal, as follows.

¶28    1. The Department conducted a "comprehensive assessment of the family's situation," WIS. STAT. § 48.355(2c)(a)1., in that it assessed the child's living situation with P.R. and M.R. and concluded that it presented a threat to the child's safety because of the power imbalance between the child and her stepfather and the duration of the abuse.

¶29    2. In response to P.R.'s statements that she could not afford to move to a new residence with her child, the Department offered free housing in a shelter. In addition, the evidence support the reasonable inference that further "financial assistance," WIS. STAT. § 48.355(2c)(a)2. would not have enabled P.R. to protect the child because P.R. did not believe the child, continued to reside with M.R. following the child's reporting of the abuse, and maintained a relationship with M.R. even after he was charged and incarcerated as a result of the child's reporting.

¶30    3. The Department offered "services," WIS. STAT. § 48.355(2c)(a)3., in the form of housing for P.R. and the child, and counseling for the child.

¶31    4. The Department provided "monitoring" of P.R.'s progress, WIS. STAT. § 48.355(2c)(a)4., including through supervised visits with the child.

¶32    5. The Department considered "alternative ways of addressing the family's needs," WIS. STAT. § 48.355(2c)(a)5, in offering the three alternative protective plans described above.

¶33    Give the evidence as summarized above, P.R. cannot show that the circuit court's finding that the Department made reasonable efforts to prevent the child's removal from her home is "against the great weight and clear preponderance of the evidence." *See Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12 (findings of fact are clearly erroneous when against great weight and clear preponderance of the evidence).

¶34    P.R. makes two arguments to the contrary. First, she argues that, once M.R. was in custody, the Department should have made efforts to keep the child in her home different from and in addition to the services it did offer. However, while P.R. may not have preferred the services offered by the Department, P.R. does not dispute that the Department did offer services and continued to offer services to P.R. None of the additional services P.R. suggests could have immediately ameliorated the circuit court's animating concern regarding P.R.'s disbelief of her child and continued relationship with her child's abuser. Moreover, the court ordered the Department to provide ongoing services for P.R., including case planning, mental health services, visitation, and parenting education.

¶35    P.R. would draw a different inference from the evidence than the circuit court as to whether the Department's offer of services was reasonable. On review of a discretionary decision, this court accepts both the circuit court's findings of fact if not clearly erroneous and reasonable inferences from the evidence. *Pfeifer*, 121 Wis. 2d at 571. P.R.'s disagreement with the court's findings and reasonable inferences, which are supported by evidence in the record, does not provide a ground to disturb the court's exercise of discretion.

¶36 Second, P.R. argues more broadly that the circuit court misused its discretion because "none of [the statutory factors listed in WIS. STAT. § 48.355(2)(c)] appear in the record and the circuit court gave no reason for their finding." But, the record shows that the court did reference the evidence related to the statutory factors. Moreover, as explained above, the record shows that the Department provided P.R. with assessment, services, monitoring, and alternative plans. In addition, the Department's disposition report reviews in detail each of the five statutory factors and what the Department was doing pertinent to each of the factors. To the extent that P.R. intends to argue that the circuit court could not have reasonably found that reasonable efforts were made to prevent removal because the court did not explicitly identify each of the five factors enumerated in § 48.355(2)(c), this argument fails because "we search the record not for evidence opposing the circuit court's decision, but for evidence supporting it." *Royster-Clark Inc.*, 290 Wis. 2d 264, ¶12.

## CONCLUSION

¶37 For the reasons stated, I conclude that P.R. has failed to show that the circuit court erroneously exercised its discretion and, therefore, I affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

15